30   65
s33  648

[No. 4117.   Decided September 23, 1902.]

SEWALL P. STONE et ux., Respondents, v. CITY OF SE-
ATTLE, Appellant.

DEFECTIVE SIDEWALKS — ORIGINAL PLAN OF CONSTRUCTION.

A city cannot relieve itself from liability for defective streets, even if the defect were a part of the original plan of construction, instead of one arising from negligence to repair.

SAME — NEGLIGENCE OF CITY — QUESTION FOR JURY.

In an action for personal injuries received by stepping into a hole left at the intersection of two sidewalks, it was error to grant a nonsuit when the evidence showed that, after the opening had been left at that point as a part of the original plan of construction, an electric light pole was so placed as to cast the hole in shadow at night, and that plaintiff stepped into the opening while passing along the walk at night, the shadow creating the appearance of an unbroken surface in the walk at that point.

Appeal from Superior Court, King County.—Hon. FRANK H. RUDKIN, Judge. Affirmed.

*W. E. Humphrey* and *Edward Von Tobel,* for appellant.

*John F. Dore* and *Noon & Noon,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—This action was brought to recover for personal injuries alleged to have been received by respondent Mary E. Stone, from a fall caused by stepping into a hole in the street. The evidence shows that at the junction of Kilbourne and Bowman avenues, in the city of Seattle, the outer plank of the cross walk was some inches short, leaving an opening which was at that time four or five inches deep, and of sufficient size for a person to step into it. This accident occurred at night. Near this opening stood a large electric light pole, from which an electric arc light was suspended in such a manner as to cast the shadow of the pole over said opening. Mrs. Stone, while passing over this cross walk, stepped into the opening while it was thus covered by the shadow, and fell, receiving the injuries for which she seeks to recover.

It appears from the evidence that the opening had existed from the time of the construction of the walk, some years before. The immediate surroundings had, however, been subsequently changed to the extent of the erection of the electric light pole and the swinging of the light thereon, by which the shadow was cast over the opening as aforesaid. The evidence further shows that the shadow extended entirely over the opening, and for some distance around it, thus presenting an extended dark and shadowy surface, all having the same general appearance as though cast upon the unbroken surface of the street at that point. The respondent, Mrs. Stone, says that, in the absence of the

shadow, the light would have revealed the opening, which she could have seen and avoided. When the respondents had introduced all their testimony bearing upon the question of negligence on the part of the city, having, as announced by counsel, no other evidence to offer except that of physicians as to the nature and extent of the injuries, a motion for non-suit was interposed by the city, on the ground that there was a total failure of proof as to any negligence on the part of the city. The motion was granted, and the jury discharged. Thereafter respondents moved for a new trial on the ground that the court committed error in law at the trial; that the evidence was insufficient to justify the court's decision, and was against the law. The latter motion was also granted, and a new trial ordered. From the order granting a new trial the city has appealed.

The only error assigned is that the court erred in granting the motion for a new trial. It is asserted in appellant's brief that, since the court granted the motion for non-suit, and dismissed the action, the motion for new trial, under our statute, is not the proper practice, and should not have been granted. The above position assumed by counsel is not discussed in the brief, and, since we see no merit in it, we will not discuss it here. The real contention of appellant is that the opening in the crosswalk was not a defect, but was an opening at the inner corner at the point where the crosswalk joins the sidewalk, and as such was a part of the drainage system of the street; that the opening was necessary in order to admit the surface water from the street into the gutter, and to give opportunity to remove any material that might accumulate in the gutter. It is contended that the street was not out of repair, and that the alleged dangerous condition was caused solely from the manner of construction of the sidewalk, crosswalk, and gut-

ter; that the city is not liable for an injury caused by a defective plan of construction, for the alleged reason that the adoption of such original plan by the city was a *quasi* judicial act, and was also the result of the exercise of legislative and discretionary functions, upon which liability cannot be predicated. In support of this contention appellant cites the following cases: *Urquhart v. Ogdensburg,* 91 N. Y. 67 (43 Am. Rep. 655); *Monk v. New Utrecht,* 104 N. Y. 552 (11 N. E. 268); *Lansing v. Toolan,* 37 Mich. 152; *Conlon v. St. Paul,* 70 Minn. 216 (72 N. W. 1073). The cases cited seem to support the contention. The Minnesota case cited states the rule substantially as follows: That, if reasonable men might differ as to which is the better plan, the decision of the city authorities on the question is conclusive, and cannot be reviewed by the courts; that neither the court nor the jury can substitute its judgment for that of the city authorities in such a case; but, when there is such gross error of judgment as to show that in fact the city authorities never exercised an intelligent judgment at all, the city may be liable for constructing or maintaining an improvement on a defective plan or scheme so adopted by it. The difficulty with the doctrine as stated in the last named case, it seems to us, lies in the fact that it would probably be difficult to find a case where city authorities have deliberately adopted a plan about which reasonable men might not differ as to whether an intelligent judgment had been exercised, when all the attendant circumstances are considered. Referring to the Michigan case, *Lansing v. Toolan, supra,* cited by appellant, we find that it had been previously held in Michigan that cities were not liable for injuries resulting from defective streets, on the theory that the streets of a city are public highways, like all other roads, and that no distinction existed in that state between the liability of cities and that

of counties. *Detroit v. Blackeby,* 21 Mich. 84 (4 Am. Rep. 450). In harmony with the above case the *Toolan Case* was decided, in which it was held that a city could not be held liable for injuries resulting from a plan of a public work, where the injured person fell into a ditch which was dug across the street by a city contractor, but was not covered the full width of the street, and which ditch was a part of the plan of certain constructive work. In referring to the Michigan doctrine, and while considering cases from that state here discussed, it is observed in a note under § 1024, 2 Dillon, Municipal Corporations (4th ed.), as follows:

"It seems to the author, however, as he understands the facts, that these are cases where the street was rendered unsafe for travel by the direct act of the city, or its contractor, and that the city would be held liable in those states in which an implied municipal responsibility is recognized for unsafe streets, which, however, is not the case in *Michigan.*"

Thus it appears to be the view of the author that the doctrine of non-liability because of a defective plan, while it may be consistent with the doctrine then announced in Michigan, that municipal liability does not exist for any defect in a street, is nevertheless inapplicable in a state where there is an implied liability for unsafe streets. In this view we concur. Since the above Michigan decisions the legislature of that state has passed an act expressly declaring municipal liability for defective streets, and the supreme court of that state has construed the law to include defects in the plan of construction as well as those arising by neglect to repair. *Carver v. Detroit & S. Plank Road Co.,* 61 Mich. 584 (28 N. W. 721); *Sebert v. Alpena,* 78 Mich. 165 (43 N. W. 1098); *Schrader v. Port Huron,* 106 Mich. 173 (63 N. W. 964). Thus, by the construction placed upon the statute, the earlier Michigan decisions have been

overruled, and the doctrine of non-liability of a municipality for a defective plan in street construction no longer exists in that state.

The doctrine announced in the New York cases cited by appellant seems to be in conflict with some other decisions in that state. In *Clemence v. Auburn,* 66 N. Y. 334, the rule is questioned, and the principle of the holding in *Seifert v. Brooklyn,* 101 N. Y. 136 (4 N. E. 321, 54 Am. Rep. 664), does not seem to be easily reconcilable with the cases cited. But, whatever may now be said to be the rule in New York, the following cases from other jurisdictions clearly refuse to distinguish between the municipal liability because of a defective plan of construction and that which arises from negligence to repair. It is held that actionable negligence is included in the one as much as in the other. *Circleville v. Sohn,* 59 Ohio St. 285 (52 N. E. 788, 69 Am. St. Rep. 777) ; *Hinds v. Marshall,* 22 Mo. App. 208; *Chicago v. Seben,* 165 Ill. 371 (46 N. E. 244, 56 Am. St. Rep. 245) ; *Kendall v. Albia,* 73 Iowa, 241 (34 N. W. 833) ; *Poole v. Jackson,* 93 Tenn. 62 (23 S. W. 57) ; *Dallas v. Jones,* 93 Tex. 38 (53 S. W. 377) ; *Gould v. Topeka,* 32 Kan. 485 (4 Pac. 822, 49 Am. Rep. 496) ; *Blyhl v. Waterville,* 57 Minn. 115 (58 N. W. 817, 47 Am: St. Rep. 596).

The last named case modifies the rule by the condition that liability shall exist only when there is no necessity or reason for the defective plan ; and *Gould v. Topeka, supra,* also limits it by the condition that, if the plan is such that different minds may entertain different opinions as to whether it is dangerous or not, the benefit of the doubt may be given to the board that planned it, and the city held not liable, but that, even in such event, it must appear that the exact matter was under consideration by the governing board, and after due deliberation such plan was expressly

adopted, or expressly ratified. The latter condition does not appear from the evidence in the case at bar. It simply appears that the construction was probably originally made as it now is, but whether the plan was considered and expressly adopted by the proper governing authorities of the city does not appear. We think, in any event, however, that the weight of authority is against appellant's contention, and that a city cannot relieve itself from liability for defective streets because the defect may be part of an original plan of construction.

This court held that the question of negligent construction of the street was one for the jury in *White v. Ballard,* 19 Wash. 284 (53 Pac. 159), although the original-plan doctrine here under consideration seems not to have been discussed. We think it was a question for the jury in the case at bar whether the city neglected to keep the street in safe condition, and it is immaterial whether the defect arose from the original construction or from subsequent causes. There is also an additional element which calls for its submission to the jury, and that is whether the city was negligent in permitting the electric light to be so placed that the shadow of the pole supporting it concealed the opening in the walk, if such be the fact. The evidence introduced by the respondents certainly tended to establish that fact, and it was for the jury to say what was the fact in that particular. We think the case was erroneously withdrawn from the jury, and that the new trial was properly granted.

The judgment is affirmed.

REAVIS, C. J., and FULLERTON, ANDERS, MOUNT, DUNBAR and WHITE, JJ., concur.